# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| Valtrus Innovations Ltd. and Key Patent Innovations Ltd., <br><br> Plaintiffs, <br><br> v. <br><br> NTT Global Data Centers Americas, Inc., <br><br> Defendant. | Civil Action No. <br><br> Hon. <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT AND JURY DEMAND

Plaintiffs Valtrus Innovations Limited ("Valtrus") and Key Patent Innovations Limited ("KPI") (collectively, "Plaintiffs"), by and through undersigned counsel, bring this complaint for patent infringement and damages against Defendant NTT Global Data Centers Americas, Inc. ("NTT") and, in support, allege the following:

## PARTIES

1. Valtrus is the successor-in-interest to a substantial patent portfolio created by Hewlett Packard Enterprise and its predecessor, subsidiary, and affiliate companies, including Hewlett-Packard Development Company, L.P. (collectively, "HPE"). Valtrus is an Irish entity duly organized and existing under the laws of Ireland. The address of the registered office of Valtrus is: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

2. KPI is the beneficiary of a trust pursuant to which Valtrus owns, holds, and asserts the Asserted Patents. KPI is an Irish entity duly organized and existing under the laws of Ireland. The address of the registered office of KPI is: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

3. On information and belief, NTT is a corporation organized and existing under the laws of the State of Nevada. On information and belief, NTT can be served with process at National Registered Agents, Inc., 1209 Orange Street, Wilmington, DE 19801.

**ASSERTED PATENTS**

4. Valtrus is the assignee of and owns all right and title to each of the Asserted Patents, which are U.S. Patent Nos. 6,854,287 (the '287 Patent); 6,868,682 (the '682 Patent); and 6,718,277 (the '277 Patent).

5. The Asserted Patents were developed by inventors working for HPE. HPE developed numerous innovative and diverse technologies, including groundbreaking inventions pertaining to data center cooling and analytics for monitoring conditions in data centers.

6. The '287 Patent, entitled "Cooling System," was duly and lawfully issued on February 15, 2005. A true and correct copy of the '287 Patent is attached hereto as Exhibit 1.

7. The '287 Patent was in full force and effect from its issuance to its expiration. Valtrus owns by assignment the entire right and title in and to the '287 Patent, including the right to seek damages, including past damages, for any infringement thereof.

8. The '682 Patent, entitled "Agent Based Control Method and System for Energy Management," was duly and lawfully issued on March 22, 2005. A true and correct copy of the '682 Patent is attached hereto as Exhibit 2.

9. The '682 Patent was in full force and effect from its issuance to its expiration. Valtrus owns by assignment the entire right and title in and to the '682 Patent, including the right to seek damages, including past damages, for any infringement thereof.

10. The '277 Patent, entitled "Atmospheric Control Within a Building," was duly and lawfully issued on April 6, 2004. A true and correct copy of the '277 Patent is attached as Exhibit 3.

11. The '277 Patent was in full force and effect from its issuance to its expiration. Valtrus owns by assignment the entire right and title in and to the '277 Patent, including the right to seek damages, including past damages, for any infringement thereof.

**<u>JURISDICTION AND VENUE</u>**

12. This is an action for patent infringement arising under the United States Patent Laws, 35 U.S.C. § 100 et seq.

13. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

14. NTT operates data center facilities in this District. NTT operates its CH1, CH2, and CH3 data center facilities, which are located at 275 Pierce Rd, Itasca, IL 60143.[1]

15. This Court has general and specific personal jurisdiction over NTT. NTT operates data centers in this District at its CH1, CH2, and CH3 facilities. NTT has maintained offices, employees, and business operations in Illinois, and has therefore purposefully availed itself of the privileges of conducting business in Illinois and has minimum contacts with the State of Illinois. The exercise of personal jurisdiction is proper under the Illinois Long Arm Statute and consistent with the Due Process Clause. The Court also has specific personal jurisdiction over NTT because, on information and belief, it has performed methods in its Illinois data center facilities that infringed the Asserted Patents, such that Plaintiffs' causes of action arise directly out of its contacts with Illinois.

16. Venue is proper in this District under 28 U.S.C. § 1400(b). NTT has a regular and established place of business in this District at its three Chicago area data centers facilities. On information and belief, NTT has committed acts of infringement in this District at these facilities.

---

[1] https://services.global.ntt/en-us/services-and-products/global-data-centers/global-locations/americas/chicago-ch1-data-center

**<u>DEFENDANT'S DATA CENTERS AND INFRINGING CONDUCT</u>**

17. NTT owns and operates a number of data centers across the United States. For example, NTT advertises operating 17 data centers across seven data center campuses strategically located across the United States.[2] NTT's data centers implement cooling equipment from various suppliers, and NTT uses that equipment to perform methods of cooling that, on information and belief, infringe the Asserted Patents.

18. In particular, NTT has used cooling equipment from Vertiv Corporation in its data centers. For example, in a related declaratory judgment action filed by Vertiv relating to the '287 Patent, a public version of Vertiv's interrogatory responses identify NTT as a Vertiv Customer. *See Valtrus Innovations Ld. v. NTT Data Services LLC*, Dkt. 98. Vertiv's cooling equipment can be seen inside NTT data centers in public video tours on NTT's website:



---

[2] https://services.global.ntt/en-us/services-and-products/global-data-centers/global-locations/americas

https://services.global.ntt/en-us/services-and-products/global-data-centers/global-locations/americas/hillsboro-hi1-data-center

19.     NTT has also used cooling equipment from Stulz in its data centers. For example, NTT advertised a strategic partnership with Stulz that involved implementing its cooling systems in its Japanese data centers. On information and belief, NTT has used Stulz equipment in its U.S. data centers:

NTT FACILITIES and STULZ Announce Strategic Partnership to Deliver STULZ's Precision Air Condition System, CyberAir3 in Japan

NTT FACILITIES, INC. (NTTF), a leader in designing and constructing state-of-the-art information facilities that support communications and Internet infrastructure, today announced that it has partnered with STULZ GmbH (STULZ), a leading global provider of data center cooling systems, for the sales, installation, and technical support of STULZ's Precision Air Cooling System, CyberAir3 exclusively in Japanese data center market. The synergies of each company will give data center companies an opportunity to enjoy the most comprehensive cooling solution that optimizes the cooling system efficiency and improves reliability of their facilities operation.

https://www.ntt-f.co.jp/english/news/2015/150512.html

20.     On information and belief, NTT may have used other cooling equipment or software from suppliers beyond Vertiv and Stulz in its data centers to perform methods that infringe the Asserted Patents, including, for example, Trane, DataAire, Schneider Electric, Automated Logic, and Nlyte. On information and belief, NTT may also use equipment from additional suppliers that Valtrus is not aware of from public information but that can be identified through discovery.

21.     Valtrus notified NTT of its infringement of its patent portfolio relating to data center technologies and sought to resolve this dispute prior to bringing this case.

22.     On March 22, 2024, Valtrus sent a letter to John Dick, the Executive Vice President & General Counsel of NTT Data Americas, Inc., about its patent portfolio and offering an opportunity to license Valtrus's patents. The letter attached a representative list of data center-related patents and included claim charts demonstrating infringement of seven patents, including

5

the '287 Patent and '277 Patent. The letter also noted that Valtrus had incomplete information regarding the products and methods used by NTT in its data centers because those data centers are secure facilities that are not open to the public, and offered to enter into a non-disclosure agreement with NTT to confirm the scope and extent of NTT's infringement.

23. On April 9, 2024, Christopher T. Stidvent, NTT Data Services, LLC's VP, Commercial Litigation provided an initial response to Valtrus' letter stating that NTT was investigating Valtrus' claims. Mr. Stidvent and counsel for Valtrus had further correspondence between then and May 6, 2024, where Mr. Stidvent asserted that NTT Data was not the entity responsible for operating U.S. data centers. Mr. Stidvent refused to identify the correct entity or provide a response to various inquiries from Valtrus, including Valtrus's licensing request.

24. On May 14, 2024, Valtrus filed a lawsuit against four related NTT entities in the Eastern District of Texas: *Valtrus Innovations Ltd. v. NTT Data Services, LLC, NTT Data Americas, Inc., NTT Communications Corp., and NTT Data, Inc.*, Case No. 2:24-cv-00361 (E.D. Tex.). Valtrus's complaint alleged infringement of the '287 Patent and '277 Patent, along with five other Valtrus-owned patents based on public information about NTT Data Services, LLC and NTT Data Americas, Inc.'s U.S. data center operations.

25. After filing its complaint, Valtrus corresponded with outside counsel for NTT, who explained that the NTT entity responsible for operating the U.S. data centers was NTT Global Data Centers Americas, Inc. Valtrus thereafter dismissed its original complaint without prejudice.

26. In the declaratory judgment litigation pending between Valtrus and Vertiv, *see Vertiv Corporation v. Valtrus Innovations Ltd.*, No. 2:24-cv-00907 (E.D. Tex.), where Vertiv has stated repeatedly that it will be liable for any judgment against its customers for infringing Valtrus's patents using its equipment, Valtrus sought to resolve its customer allegations directly with Vertiv.

Valtrus made multiple attempts to resolve its disputes with Vertiv's customers throughout 2024 and 2025, and Vertiv consistently refused to engage. On February 5, 2026, Valtrus sent a final request to Vertiv to resolve its customers' infringement without litigation. Exhibit 4. Vertiv never responded.

27.     Because NTT and Vertiv have refused to engage with Valtrus's requests to resolve this dispute without litigation, and NTT has not provided any additional information about its cooling equipment used in its data centers, Plaintiffs have been forced to file this case to protect their valuable patent rights.

## FIRST CLAIM

### (Infringement of the '287 Patent)

28.     Valtrus re-alleges and incorporates herein by reference paragraphs 1-27 of the Complaint.

29.     The '287 Patent is generally directed to a system and method for cooling a room configured to house a plurality of computer systems.

30.     NTT infringed the '287 Patent by performing methods of cooling its data centers prior to the expiration of the '287 Patent. As described above, NTT has used cooling equipment from at least Vertiv and Stulz to cool its data centers, and may have also used other cooling equipment from DataAire, Schneider Electric, Trane, or other suppliers in a similar manner to perform the claimed methods. Exemplary claim charts reflecting how NTT used or may have used these products to infringe claim 1 of the '287 Patent are attached as Exhibits 5-8.

## SECOND CLAIM

### (Infringement of the '682 Patent)

31.     Valtrus re-alleges and incorporates herein by reference paragraphs 1-27 of the Complaint.

7

32. The '682 Patent is generally directed to a system and method for controlling temperature in a data center based on sensory data.

33. NTT infringed the '682 Patent by performing methods of cooling its data centers prior to the expiration of the '682 Patent. As described above, NTT has used cooling equipment from at least Vertiv and Stulz to cool its data centers, and may have also used other cooling equipment from DataAire, Schneider Electric, Trane, or other suppliers in a similar manner to perform the claimed methods. Exemplary claim charts reflecting how NTT used or may have used these products to infringe claim 1 of the '682 Patent are attached as Exhibit 9-12.

## THIRD CLAIM

### (Infringement of the '277 Patent)

34. Valtrus re-alleges and incorporates herein by reference paragraphs 1-27 of the Complaint.

35. The '277 Patent is generally directed to a system and method for controlling atmospheric conditions within a data center building.

36. NTT infringed the '277 Patent by performing methods of cooling its data centers prior to the expiration of the '277 Patent. As described above, NTT has used cooling equipment from at least Stulz to cool its data centers, and may have also used other cooling equipment from Schneider Electric, Nlyte, Automated Logic, or other suppliers in a similar manner to perform the claimed methods. An exemplary claim chart reflecting how NTT used or may have used these products to infringe claim 1 of the '277 Patent is attached as Exhibit 13.

### PRAYER FOR RELIEF

WHEREFORE, Valtrus prays for judgment against NTT, as follows:

A. That NTT has infringed each of the Asserted Patents;

8

B. That NTT pay Plaintiffs damages adequate to compensate Plaintiffs for its past infringement of each of the Asserted Patents, together with interest and costs under 35 U.S.C. § 284;

C. That NTT pay prejudgment and post-judgment interest on the damages assessed;

D. That this is an exceptional case under 35 U.S.C. § 285; and that NTT pay Plaintiffs' attorneys' fees and costs in this action; and

E. That Plaintiffs be awarded such other and further relief, including equitable relief, as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury on all issues triable to a jury.

Date: April 9, 2026

Connor S. Houghton
Reichman Jorgensen Lehman & Feldberg LLP
1909 K Street NW, Suite 800
Washington DC, 20006
Tel: (202) 894-7310
choughton@reichmanjorgensen.com

Patrick Colsher
Sean M. McCarthy
Reichman Jorgensen Lehman & Feldberg LLP
650 Fifth Avenue, Suite 2320
New York, NY 10019
Tel: (212) 381-1965
pcolsher@reichmanjorgensen.com
smccarthy@reichmanjorgensen.com

Respectfully submitted,

*/s/ Matthew Berkowitz*
Matthew G. Berkowitz
Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel: (650) 623-1401
mberkowitz@reichmanjorgensen.com

*Attorneys for Plaintiffs*